# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| NATHANIEL L. ADDERLY, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 07-507 |
| | ) | Judge Nora Barry Fischer/ |
| C.O. I FERRIER; CO 1 SCHAMP; CO 1 JOHNSON; CO 1 BLAKE; LT. FRANK; SGT MATTHEWS; CO 1 STEPHENS; CO 1 GAGNON; SGT. AUGUSTINO, CO 1 WILCHER; LT. YOCUM; CAPT. BOVO; and CO1 BLAKER; | ) | Chief Magistrate Judge Amy Reynolds Hay |
| Defendants. | ) | Re: Dkt. [90] |

## MEMORANDUM ORDER

Nathaniel Adderly ("Plaintiff") brought a civil rights suit in federal court against multiple defendants who were all employed at SCI-Greene, where Plaintiff was housed at the time of the alleged incidents giving rise to the present suit. Plaintiff alleged that the Defendants engaged in discrete acts of abuse against him from January 2005 until April 14, 2005.

Plaintiff initiated this prisoner civil rights suit in April 2007. The case was referred to then United States Magistrate Judge Amy Reynolds Hay for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and the then applicable local rules.

The Chief Magistrate Judge's Report and Recommendation, Dkt. [100], filed on June 2, 2010, recommended that summary judgment be granted to all remaining Defendants. Service of the Report was made on Plaintiff at his prison. On June 16, 2010, Plaintiff filed objections. Dkt. [101]. On June 18, 2010, Plaintiff filed what the Court will construe as a supplement to his

objections, wherein he cites caselaw in support of his objections. Dkt. [102]. The Court will now address the objections.

Plaintiff first contends that the Report erred in finding that Plaintiff failed to show a genuine issue of material fact regarding whether Plaintiff was entitled to equitable tolling. Dkt. [101] at 2. Plaintiff argues he was entitled to equitable tolling for his claims concerning the January 2005 alleged incidents. As the Report noted, the Defendants pointed out that Plaintiff's claims, concerning the January 2005 incidents of unspecified dates, were time barred even granting Plaintiff equitable tolling for the time during which he was exhausting because Plaintiff did not file any grievances concerning these alleged events. In other words, the Defendants pointed out that Plaintiff was not entitled to any equitable tolling as to the January 2005 incidents for the period during which he should have been exhausting his administrative remedies because Plaintiff, in fact, did not file any grievances, i.e., he did not exhaust any administrative remedies with respect to the January 2005 alleged incidents. The Report noted that in response to the Defendants' contentions, Plaintiff did not argue the he had filed formal grievances but that he had utilized other methods of exhausting. Dkt. [100] at 9 ("In response to the evidence that Plaintiff filed no grievances under DC-ADM 804 regarding his January claims, Plaintiff afforded no evidence that he did file any such grievances. He did however contend that he exhausted his administrative remedies by utilizing other provisions of DOC policy. Dkt. [97] at 2 to 3, ¶¶ 7-8."). In his objections, Plaintiff now argues for the first time that he did file a grievance concerning the alleged January 2005 incidents and that the specific grievance he filed is Grievance No. 109870. Dkt. [101] at 2. There are at least two problems with this argument.

First, Plaintiff never pointed to this specific grievance in his filings opposing the

2

Defendants' motion for summary judgment as the basis for his contention that he was entitled to equitable tolling for the alleged January 2005 incidents. Because he failed to do so, he failed to show a genuine issue of material fact based on a claimed entitlement to equitable tolling for the period of time Grievance No. 109870 was pending. In response to the Defendants' summary judgment motion, it was incumbent upon Plaintiff to adduce such evidence of his entitlement to equitable tolling. The Court had no duty to go searching through the record to find any such evidence of equitable tolling. See, e.g., Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir. 1992)(in reviewing the summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention). In their Concise Statement, the Defendants clearly stated that "inasmuch as Plaintiff never filed a grievance about any of his January, 2005 claims, the defendants maintain that these claims should be time barred." Dkt. [92] at 3, ¶ 16. In Plaintiff's Responsive Concise Statement (referred to by Plaintiff as "R.C.S."), Plaintiff merely stated that "Plaintiff denies/disputes/contests this entirely. Please see/refer to Plaintiff's R.C.S. at ¶ 7 inter alia. Plaintiff utilized the provisions inter alia highlighted in Plaintiff's R.C.S at ¶ 7 inter alia pertaining to January 2005 issues in addition to DC ADM 804[1] inter alia." Dkt. [97] at 4, ¶ 16.[2] Notably, in his response, Plaintiff never pointed to Grievance No. 109870 as the

---

[1] While Plaintiff says "in addition to DC-ADM 804," he pointed to no specific grievance he filed under DC-ADM 804. Without pointing to any such specific grievance, he failed to show a genuine material issue of fact concerning whether he was entitled to equitable tolling for the pendency of any such grievance filed under DC-ADM 804.

[2] Plaintiff cites RCS at 2, ¶ 7, as support for how he did allegedly exhaust his January 2005 claims. In their Concise Statement, the Defendants stated that "[a] review of Plaintiff's grievance history for the relevant time period (i.e., from January, 2005 through April, 2005), reveals, that
(continued...)

Grievance which entitled him to any equitable tolling for the alleged January 2005 incidents.

Reviewing that which Plaintiff points to, we agree with the Report, namely, that Plaintiff failed to specifically point to any evidence in his response that he did in fact file formal grievances under DC-ADM 804 so as to carry his burden to show a genuine issue of fact concerning whether and as to when he was entitled to equitable tolling based on any specific grievance filed under DC-ADM 804. Rather, as the Report correctly notes, Plaintiff relied on other methods for purposes of allegedly exhausting his administrative remedies with respect to the alleged January 2005 incidents. Given this, the Report got it exactly right -- Plaintiff failed to

---

²(...continued)
Plaintiff filed just six (6) grievances." Dkt. [92] at 2, ¶ 7. In response, Plaintiff stated the following:

> Plaintiff denies/disputes this in part. Particularly Defendants['] allegation that "Plaintiff filed just six (6) grievances. ( )[sic]" According to the Inmate Handbook DOC Policy DC ADM 804 in pertinent parts "For emergency (an emergency) you should speak to the nearest staff (member) person as soon as possible" and "you should first try to solve a problem by speaking with or writing to staff, using a DC-135A, Inmate Request to Staff Member."
> These provisions of D.O.C. policy can serve the purpose of grievance either verbatim or otherwise inter alia.
> Plaintiff utilized both the Inmate Grievance methods [and] venues inter alia in addition to, along with DC ADM 804 Inmate grievances Defendants have enumerated in this particular allegation inter alia, and the aforementioned provisions of DC ADM 804 inter alia.
> Also Plaintiff utilized provisions in/of the D.O.C. Policy DC ADM-001 Abuse Allegations which instructs in pertinent part "If you are a victim of abuse, you need to report the abuse
>     a. report verbally or in writing to any staff member;
>     b. file a grievance (see DC ADM 804, "Inmate Grievance System")
> and/or
>     c. report it in writing to the Office of Professional Responsibility.
> A third party may make reports of allegations of inmate abuse, verbally or in writing to any staff member at the facility or at Central Office."

Dkt. [97] at 2 to 3, ¶ 7.

4

show that he was entitled to any equitable tolling for his claims that allegedly occurred in January 2005.

Once the Defendants carried their initial summary judgment burden to show no equitable tolling because no grievances were filed, it was incumbent upon Plaintiff to bring forth evidence entitling him to equitable tolling for the time during which he was allegedly exhausting administrative remedies as to the January 2005 incidents. This he failed to do in his summary judgment filings before the Magistrate Judge. His failure to specifically point to Grievance No. 109870 in his summary judgment filings as being the method of exhausting remedies concerning the January 2005 incidents redounds to his detriment given that he had the burden to produce this evidence. It was not the Magistrate Judge's duty to search the record for a triable issue. Guarino v. Brookfield Township Trustees, supra. The Report analyzed the evidence which Plaintiff pointed to and found that evidence lacking to show entitlement to equitable tolling. In this, the Report was correct and Plaintiff has not demonstrated otherwise.

Having failed before the Magistrate Judge to point to this evidence of Grievance No. 109870 as being the basis for equitable tolling for the alleged January 2005 incidents, this Court will not now consider such evidence. See, e.g., De Cuir v. County of Los Angeles, 223 Fed. Appx. 639, 641 (9th Cir. 2007)("The district court did not abuse its discretion in declining to consider evidence De Cuir presented for the first time in his objections to the magistrate judge's report recommending summary judgment for defendants."). Indeed, "[f]or the district judge to review new evidence or arguments [raised in objections]'would reduce the magistrate's work to something akin to a meaningless dress rehearsal.'" In re Consolidated RNC Cases, 05 Civ. 1564, etc., 2009 WL 130178, at *10 (S.D.N.Y., Jan. 8, 2009)(quoting, Wong v. Healthfirst, Inc., No. 04

Civ. 10061(DAB), 2006 WL 2457944, at *1 (S.D.N.Y. Aug. 23, 2006)(some internal quotation marks omitted)). Because the proceedings before the Magistrate Judge must not be reduced to a mere dress rehearsal and because Plaintiff failed to point to Grievance No. 109870 to toll the alleged claims arising in January 2005, the Court will not consider this evidence now for the first time; any other result herein would be to render those proceedings precisely that, a mere dress rehearsal. Plaintiff failed to show a genuine issue of material fact before the Magistrate Judge on this issue and thus, the Report did not err in recommending the grant of summary judgment as to the January 2005 claims being time barred.

Secondly, and in the alternative, even if we were to consider Grievance No. 109870 as being Plaintiff's purported basis for equitably tolling his claims, Plaintiff failed to show that Grievance No. 109870 concerned any January 2005 alleged incidents. See, e.g., Dkt. [90-1] at 4 and at 7. The Court has no hesitancy in concluding that this grievance did not in any manner complain of or attempt to grieve the alleged incidents of January 2005. Plaintiff argues that the request to have the "state police . . . do a massive investigation into this and other matters I have previously addressed" (Dkt. [90-1] at 4), satisfies his obligation to exhaust his administrative remedies with respect to the alleged January 2005 incidents because the "other matters I have previously addressed" meant the alleged January 2005 incidents. Dkt. [101] at 2. We are not convinced.

Plaintiff has utterly failed to show that any reasonable juror could find that this amorphous reference to "other matters I have previously addressed" satisfied his obligation under the Grievance regulations to exhaust his claims regarding the alleged January 2005 incidents. Hence, even if we considered this evidence of Grievance No. 109870, Plaintiff has failed to

carry his burden of showing entitlement to equitable tolling for the claims concerning the alleged January 2005 incidents because he failed to show that those claims were being exhausted by means of Grievance No. 109870.

Accordingly, for either of the foregoing reasons, Plaintiff's objections to the Report based on this argument concerning Grievance No. 109870 are overruled.

Plaintiff's second objection concerns the Report's finding that placing Plaintiff in a strip cell following the February 5, 2005 cell extraction for a period of five or seven days did not constitute a violation of the Eighth Amendment but served legitimate penological interests and that Plaintiff established neither the objective nor subjective prong of an Eighth Amendment claim. More specifically, the Report noted that "[t]o the extent that Plaintiff is attempting to make out an Eighth Amendment claim, we find under the circumstances of this case, Plaintiff fails to state an Eighth Amendment claim given the legitimate penological interests served by placing a non compliant, belligerent inmate, (who is already in the Restricted Housing Unit, the least privileged housing unit in the prison), in a strip cell and so neither the objective nor subjective component of an Eighth Amendment conditions of confinement claim is made out." Dkt. [100] at 13 (footnote omitted). Plaintiff contends that the Report "misinterpreted" his claims, Dkt. [101] at 2, and he argues that he was not belligerent and/or not non-compliant. He based this argument upon statements by two Defendants that they could see into Plaintiff's cell which he takes as evidence that he had not covered his cell window in violation of the rules and, thus, no cell extraction should have occurred and he should not have been transferred to a strip cell. The DVD of the February 5, 2005 incident demonstrates to the contrary, i.e., fully established that Plaintiff was belligerent, non-compliant and in violation of multiple prison rules.

This objection is meritless and overruled as such.

Plaintiff next objects to the Report's finding that Plaintiff did not specify which days he was allegedly denied food between April 7, 2005 and April 14, 2005. Dkt. [101] at 4 to 5 (objections). See also Dkt. [100] at 16 to 18 (Report analyzing Plaintiff's claims of denial of food). The Report was accurate in this respect but even if it were not accurate and Plaintiff did specify the dates, such would not warrant rejecting the Report's conclusion regarding Plaintiff's failure to adduce evidence of either the subjective or objective prong of an Eighth Amendment claim. Suffice it to say that the Report relied upon Plaintiff's grievance filed nearly contemporaneously with the events to show that Plaintiff complained of being denied "[f]or seven days . . . breakfast and lunch trays by C/O Shamp on FB pod." Dkt. [100] at 16, (quoting Dkt. [90-1] at 40, i.e., Grievance No. 115486 filed on 4/15/05). Based upon this contemporaneous grievance, the Report found that Plaintiff implicitly conceded in the grievance that he was, in fact, provided dinner trays during this time period and the Report went on to find that Plaintiff failed to show that the dinners he concededly received were nutritionally inadequate to maintain his health which would be necessary to make out an Eighth Amendment claim. This analysis was undoubtedly correct. See, e.g., Sims v. Michigan Dept. of Corrections, 23 Fed. Appx. 214, 216 (6th Cir. 2001)("one meal per day that provides sufficient nutrition to sustain normal health does not offend the Constitution")(citing Cunningham v. Jones, 667 F.2d 565, 566 (6th Cir. 1982)). However, in his objections and contrary to his grievance, Plaintiff now claims that he was denied **all** meals from April 7, 2005 until April 14, 2005. Specifically Plaintiff claims "Defendants Schamp, Blake, Johnson, and Stephens intentionally failed to provide Plaintiff[']s life sustaining maintaining/preserving nourishment between April 7, 2005 through

8

April 14, 2005, thus intentionally failing to provide Plaintiff with approximately nineteen (19) consecutive meals during a seven day time period. . . ." Dkt. [101] at 4. We note that this is not the only instance of Plaintiff claiming one thing in his grievances and then inconsistently claiming another thing either in his complaint or in his objections. We find that, to the extent Plaintiff's claims in his complaint or claims in his objections contradict either implicitly or explicitly that which was asserted in the grievances, the grievances control and no reasonable jury could credit Plaintiff's subsequent contradictory claims. See, e.g., Kreimar v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1250 (3d Cir. 1992) ("[w]hile summary judgment may be based upon affidavits, conflicts of credibility should not be resolved on a hearing on the motion for summary judgment **unless** the opponent's evidence is 'too incredible to be believed by reasonable minds.'")(emphasis added)(*quoting* Losch v. Borough of Parkesburg, 736 F.2d 903, 909 (3d Cir. 1984)); Bacon v. Hennepin County Medical Center, No. 06-CV-2359, 2007 WL 4373104, at *13 (D.Minn. Dec. 11, 2007)("Bacon told the Smyrak story only once, in her January 2007 deposition. If Smyrak in fact gave Bacon permission to stop calling in, surely she would have mentioned this crucial piece of information at some earlier point (such as in responding to Weber, in litigating her eligibility for unemployment benefits, or in her complaint) or at some later point (such as in her declaration). As a general rule, a court ruling on a summary-judgment motion must assume that the nonmoving party's evidence is true. But that general rule must yield in those rare cases when testimony submitted by the nonmoving party is literally unbelievable. *See Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir. 1984) . Bacon's claim that Smyrak authorized her to stop complying with HCMC's call-in policy is such testimony; no reasonable jury could believe it."), *aff'd*, 550 F.3d 711 (8th Cir. 2008). See also

Cooper v. Diggs, CIV.A. 07-1557, 2010 WL 2331067, at *5 (W.D.Pa. June 4, 2010); U.S. v. Doyle, 276 F.Supp.2d 415, 432 n.8 (W.D. Pa. 2003); Cooper v. Blevins, No. Civ. A. 90-3540, 1991 WL 30703 (E.D. Pa. March 4, 1991). Accordingly, we find that Plaintiff's objections to this portion of the Report are inherently incredible and, thus, overrule these objections.[3] Thus, any claim about denial of dinner trays is simply incredible on this record, i.e., no reasonable juror could believe Plaintiff's claims of being denied dinner trays in light of the whole record. In sum, we agree with the Report that found Plaintiff received dinner trays and the Report's conclusion, based upon Plaintiff's receipt of dinner, and his failure to show that these dinners provided him inadequate daily nutrition, that Plaintiff also failed to show a sufficiently serious objective deprivation so as to make out an Eighth Amendment claim.

Moreover, Plaintiff's objections do nothing to the Report's alternative holding that there was no sufficient showing of the subjective prong in light of Plaintiff's failure to show "that any of the Defendants knew at the time of the alleged denials of breakfast and lunch for seven consecutive days, that such posed a substantial risk of serious harm, given the undeniable provision of dinners to Plaintiff." Dkt. [100] at 76. Accordingly, this objection is overruled.

Next, based upon Jones v. Bock, 549 U.S. 199 (2007), Plaintiff objects to the Report's finding that Plaintiff procedurally defaulted his claims in Grievance No. 109221 for failing to

---

[3] Moreover, to the extent that Plaintiff now claims Defendant Stephens denied Plaintiff dinner trays during April 7, to April 14, 2005, Dkt. [101] at 4 ("To clarify, Defendant Stephens intentionally failed to provide Plaintiff's life sustaining/maintaining/preserving nourishment . . . . (i.e., dinner trays)"), we find such a claim to be unexhausted because he failed to name Stephens in Grievance No. 115486, and he failed to complain of the denial of dinner trays in Grievance No. 115486, as would be expected, given that Plaintiff complained of being denied breakfast and lunch trays during that same period in Grievance No. 115486. See, e.g., Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004)(failure to name individual in grievance results in procedural default);Watts v. Herbik, Slip Copy, 2010 WL 438443, at *1 (3d Cir. 2010)(non-precedential opinion)(same).

name anyone in the Grievance. Dkt. [101] at 5. We find this objection without merit for the reasons given in the Report. Dkt. [100] at 20 to 22.

Even if the objection had any merit, the objection does nothing to the Report's alternative holding that Plaintiff procedurally defaulted his claims contained in Grievance No. 109221 for yet a second independent reason, namely, because he did not rectify the identified shortcomings in his appeal of the grievance as directed to do so by the DOC authorities. See Report, Dkt. [100] at 22 to 23. Thus, Plaintiff's objections are overruled and, alternatively, even if not overruled, they would be of no consequence in light of the Report's alternative holding.

Any other objection not specifically addressed herein is deemed to have been adequately addressed in the Report.

Lastly, as a general matter, we find all of the cases cited in Plaintiff's supplemental objections, Dkt. [102], to be distinguishable and/or not controlling precedent and/or not persuasive to reject the recommendation.

After *de novo* review of the pleadings and the documents in the case, together with the Report and Recommendation and objections, the following order is entered:

AND NOW, this 29th day of June, 2010;

**IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment, Dkt. No. [90], is GRANTED.

**IT IS FURTHER ORDERED** that the Report and Recommendation, Dkt. [100], filed on June 2, 2010, by Chief Magistrate Judge Hay, is adopted as the opinion of the Court, as supplemented by this Memorandum Order. Any other pending motions are DENIED as moot. The Clerk is to mark the case closed.

Lastly, the court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith.

Notwithstanding the Court's certification, if Plaintiff wishes to appeal to the Third Circuit Court of Appeals, Plaintiff is advised that he has the right for thirty (30) days to file a notice of appeal in the office of the District Court's Clerk of Courts from our order entering summary judgment. Fed. R.App. P. 4(a)(1)(A).

/s/ Nora Barry Fischer
Nora Barry Fischer
District Judge

Dated: June 29, 2010

cc: Amy Reynolds Hay
Chief U.S. Magistrate Judge

Nathaniel L. Adderly
DC-8452
SCI Frackville
1111 Altamount Blvd.
Frackville, PA 17931-2699

All counsel of record by Notice of Electronic Filing